IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

CORINE E. WORTHY,                    :
                                     :
         Plaintiff,                  :
                                     :
                                     :      CIVIL ACTION
v.                                   :      No. 5:23-CV-519 (CAR)
                                     :
TROY MEINK, SECRETARY OF THE :
UNITED STATES AIR FORCE,[1]          :
                                     :
         Defendant.                  :
_____    :

## ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS
## AMENDED COMPLAINT

Plaintiff Corine E. Worthy, proceeding *pro se*, filed this employment discrimination, retaliation, and hostile work environment suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), against Defendant Troy Meink, in his official capacity as Secretary of the Air Force (the "Agency"), asserting she was discriminated against based on her race, sex, and age; retaliated against; and harassed and subjected to a hostile work environment during her civilian employment with United States Air Force at Robins Air Force Base.

Plaintiff filed her original Complaint, and the Agency timely moved to dismiss

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Troy Meink, Secretary of the United States Air Force, is substituted for Frank Kendall, former Secretary of the United States Air Force.

it. In response, Plaintiff filed her Amended Complaint, and the Agency filed a Partial Motion to Dismiss Plaintiff's Amended Complaint. Because Plaintiff's Amended Complaint supersedes her original complaint, the Agency's original Motion to Dismiss [Doc. 11] is rendered **MOOT**.[2] And having carefully considered the Agency's Partial Motion to Dismiss Plaintiff's Amended Complaint, the operative pleadings, and the applicable law, the Court **GRANTS in part** and **DENIES in part**[3] the Agency's Partial Motion to Dismiss [Doc. 17]. All of Plaintiff's disparate treatment and harassment/hostile work environment claims, and Plaintiff's retaliation Claims 4, 5, 7, 10-18, 22, and 23 are **DISMISSED**.[4] Plaintiff's retaliation claims in Claims 6, 8, 9, and 19-21 will proceed forward.

## LEGAL STANDARD

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[5] To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] A claim is plausible where the plaintiff alleges

---

[2] *Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (An amended pleading "supersedes the former pleading" such that "the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.") (internal quotation marks and citation omitted).

[3] The Court denies Defendant's request to dismiss Plaintiff's retaliation claim in Claim 8.

[4] Ordinarily, the Court would afford a *pro se* plaintiff an opportunity to amend her complaint. But Plaintiff has already amended her Complaint in response to the Agency's first Motion to Dismiss.

[5] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[8]

When determining the adequacy of the allegations in the Complaint, the Court remains mindful that "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."[9] Nevertheless, "[e]ven with *pro se* litigants, 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.'"[10]

## BACKGROUND

Plaintiff, an African American woman over age 40, asserts a multitude of claims against the Agency for disparate treatment and harassment/hostile work environment based on her race, sex, and age; and for retaliation after she filed an Equal Employment Opportunity ("EEO") complaint. Plaintiff's claims are based on events that occurred between 2016 and 2018 while she was employed as a civilian Procedures and Analysis Supervisor in the 561st Aircraft Maintenance Squad at Robbins Air Force Base. The

---

[7] *Id.*

[8] *Bell Atlantic Corp.*, 550 U.S. at 556.

[9] *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

[10] *United States v. Korman*, No. 07-80998-Civ., 2008 WL 5662165, at *3 (S.D. Fla. Nov. 5, 2008) (quoting *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1246 (11th Cir. 2005)).

Agency moves to dismiss all of Plaintiff's disparate treatment and harassment/hostile work environment claims, and all but her five retaliation claims in Claims 6, 9, 19, 20, and 21.

Facts Alleged in Amended Complaint[11]

On July 14, 2013, Plaintiff was promoted to a Procedures and Analysis Supervisor in the 559th Aircraft Maintenance Squad (AMXS)[12] wherein she supervised seven civilians and a contractor "in performing analysis on production and production-support activities" in the Weapons System Support Center ("WSSC") at Robins Air Force Base.[13] Her appraisal ratings for 2014, 2015, and through June 2016, reflect that she met all expectations and received monetary awards of $1,096 for 2014; $942 for 2015; and $988 for 2016.[14]

On July 22, 2016, James Kelly, the Deputy Director of the 561st AMXS, recommended management hire Plaintiff for the vacant Deputy Chief position in the 561st AMXS.[15] On August 7, 2016, Plaintiff was "moved" to the 561st AMXS as an operations manager but not to the vacant Deputy Chief position.[16] Based on her

---

[11] The Court includes only the facts pertinent to this Order. Facts related to the claims the Agency does not seek to dismiss are not included.

[12] Am. Compl., p. 8 [Doc. 12-2]; Ex. 1, SF-50 promotion [Doc. 12-3].

[13] *Id.*; *see also* Aug. 11, 2016 Recommendation letter from David Johnson, Director of the 559th AMXS, recommending Plaintiff as a candidate for the University of Tennessee Aerospace & Defense Master of Business Administration Program [Doc. 12-8].

[14] Appraisal Ratings [Docs. 12-4, 12-5, & 12-6].

[15] Am. Compl., p. 9.

[16] *Id.*; Ex. 6, Aug. 11, 2016 Recommendation letter from David Johnson, Director of the 559th AMXS, recommending Plaintiff as a candidate for the University of Tennessee Aerospace & Defense Master of

allegations, it appears Plaintiff's supervisors were Ms. Campbell, F-15 Weapons System Support Center (WSSC) Chief;[17] Mr. Doubleday, Director of the 561 AMXS; and Mr. Best.

Seven months after Plaintiff was "moved" to the 561 AMXS, in March 2017, a white male, Kirt Mullins, was placed in the 561st AMXS Deputy Chief position.[18] On March 11, 2017, before Mullins was placed in the Deputy Chief position, Plaintiff sent an email to Ms. Campbell "inquiring" about Mullins in the Deputy Chief position.[19] Plaintiff stated she had heard Mullins was going to be selected and asked to discuss her official role and whether there were "any career broadening opportunities for [her] in the 561 AMXS, to include the … Deputy position."[20] Ms. Campbell responded two days later, on March 13, 2016, stating that "[w]hen the 561st Deputy … position was open on USAJOBS, [Plaintiff] personally came to [her] office to explain that [she] would NOT be applying because [her] wish was to 'get into production[,]'" and Ms. Campbell asked Plaintiff if "that [was] still [her] desire?"[21]

On March 20, 2017, at 6:26p.m., Plaintiff responded that she did not tell Ms. Campbell she was not applying for the Deputy Chief position because she wished to "get

---

Business Administration Program [Doc. 12-8] (Plaintiff "was recently selected to join the 561st Aircraft Maintenance Squadron (F-15) as an operations manager.").

[17] Ex. 22, April 28, 2017 email regarding notification of Plaintiff's informal complaint [Doc. 12-14]. Ms. Campbell is Ashley Wilder, *see* Am. Compl., p. 1.

[18] *Id.* at p. 2.

[19] *Id.*

[20] Ex. 20, March 11, 2016 email to Ms. Campbell [Doc. 12-22, p. 3].

[21] *Id.* at p. 2 (capitalization in original).

into production."[22] But Plaintiff admitted she did not apply for the Deputy Chief position and clarified that she wanted "to know if the Deputy [position] ha[d] been filled" and whether "if filled, was [it] filled noncompetitive."[23]

The next day, March 21, 2017, Ms. Campbell responded with concerns over "efficient utilization of overtime."[24] Ms. Campbell wrote to Plaintiff that she was

> extremely concerned that [Plaintiff's] email [was] not an efficient utilization of overtime (time stamped 6:26pm)[.] I would like to have a formal discussion as to why this was the focus at 6:26pm when today in walk the wall the charts were still not correct i.e. [t]he requirement[s] are still wrong (gate 1), build up was not broken out by sub gate, and the requirements were wrong[.] I will document these concerns and publish overtime expectations TODAY.[25]

Ms. Campbell then sent an email to several individuals, including Plaintiff, about overtime expectations for the 561st wherein she stated:

> It has come to my immediate attention that we need to scale back overtime for supervision in the WSSC. Please limit your overtime to only 2 hours per day. If you need to work Saturdays, that will only be approved on a case by case basis with VERY specific justification. The same will go for exceeding 2 hours per day, required request with proper justification. This is effective immediately.[26]

---

[22] *Id.* at p. 1.
[23] *Id.*
[24] *Id.*
[25] *Id.* (capitalization in original).
[26] Ex. 21, March 21, 2017 email from Ms. Campbell [Doc. 12-23].

On the same day, March 21, 2017, Michael Doubleday, Director of the 561st AMXS, made a request for personnel action to place Plaintiff in a higher pay-grade NH-0301-003 position, assigned to 561st AMXS.[27] He "pre-coordinated this request with Mr. Best[.]"[28]

Less than a month later, on April 10, 2017, Plaintiff filed an informal complaint of discrimination with the Agency. Plaintiff participated in an unsuccessful mediation on May 18, 2017, and filed a formal complaint of discrimination based on race, sex, and reprisal with the EEO on July 14, 2017.[29] Plaintiff complained, in pertinent part, that Ms. Campbell's email about scaling back overtime was "designed to target and impose undue and unjust punishment on her for inquiring about a White male being placed in the 561 AMXC WSSC Deputy position"; and Ms. Campbell "harassed" Plaintiff when she questioned Plaintiff's overtime which Plaintiff contended was in retaliation for inquiring about a white male being placed in the Deputy position.[30]

In July 2017, after Plaintiff filed her formal complaint of discrimination, Plaintiff alleges Ms. Campbell instructed one of the employees Plaintiff directly supervised to cease all communications with Plaintiff and report directly to Deputy Chief Brian Scarbrough, and Plaintiff claims Ms. Campbell repeatedly questioned and undermined Plaintiff's authority as a first-level supervisor by "going to Plaintiff's employees

---

[27] Ex. 27, March 21, 2017 email from Michael Doubleday [Doc. 12-29].
[28] *Id.*
[29] Notice of Accepted and Partially Dismissed Issues [Doc. 12-12].
[30] *Id.*

7

regarding performance of their duties."[31] Plaintiff also became aware she would not be placed in the higher NH-301-003 position.[32] Gregory Taylor, Resource Advisor, sent an email to Plaintiff stating he was "unable to move [Plaintiff] due to the fact that [he] d[id] not have a vacant valid NH position to put [Plaintiff] on."[33]

On August 31, 2017, Plaintiff filed a First Amendment to her EEO complaint wherein she complained, in pertinent part, that her non-placement in the vacant NH-0301-003 position, Ms. Campbell's instruction to Plaintiff's direct-report employee to report to another supervisor and cease all communication with Plaintiff, and Ms. Campbel's repeated questions and alleged diminishment of Plaintiff's authority as a first-level supervisor, were discrimination, harassment, and retaliation for Plaintiff filing her formal EEO complaint.[34]

On November 17, 2017, Plaintiff filed a Second Amendment to her EEO complaint again complaining that Ms. Campbell discriminated against her because of her race and sex when she "refused to put [Plaintiff] on a vacant NH-0301-003, Production and Material Support Supervisor position."[35]

On January 19, 2018, two months after Plaintiff filed her second amendment to the EEO complaint, Ms. Campbell gave Plaintiff a lowered score on her 2017 CCAS Salary

---

[31] Am. Compl., pp. 2-3.
[32] *Id.* at p. 3; Ex. 28, July 24, 2017 email from Gregory Taylor to Plaintiff [Doc. 12-30].
[33] Ex. 28, July 24, 2017 email from Gregory Taylor to Plaintiff.
[34] Doc. 12-13.
[35] Doc. 12-14.

Appraisal Document, did not find her eligible for a salary increase, included negative remarks (e.g., "very basic level work"), and gave her a cash award of $436.00.[36]

On February 6, 2018, Plaintiff filed her Third Amendment to her EEO formal complaint complaining that her lowered Salary Appraisal score and Ms. Campbell's negative remarks were discrimination and retaliation.[37]

In April 2018,[38] Ms. Campbell, over Plaintiff's objection, directed Plaintiff to increase the appraisal ratings of two white males, who were among four employees Plaintiff rated, by two points in one element.[39] In May, Plaintiff was directed by another supervisor to change the appraisal awards  of those two white males from a B to an A, despite Plaintiff's objection.[40] Subsequently, in May 2018, Mr. Stuart directed Plaintiff to conduct her employees' appraisal feedback sessions in his office while he was present, and during one of those meetings, "Mr. Stuart turned the meeting into a personal character assassination against Plaintiff."[41] One of Plaintiff's employees, a black male, objected to Mr. Stuart's presence at his feedback session, and on June 6, 2018, "Mr. Doubleday directed Plaintiff to ban the employee from Building 47."[42]

---

[36] Am. Compl., p. 4; Doc. 12-15.

[37] Doc. 12-15.

[38] It is unclear whether these events occurred in April or May 2018. Plaintiff alleges they occurred in April, but Plaintiff's Fourth Amendment to her EEO Complaint states these events occurred in May. [Doc. 12-16].

[39] Am. Compl., p. 4.

[40] *Id.* at pp. 4-5.

[41] *Id.* at p. 5.

[42] *Id.*

From June 2018 through July 10, 2018, Plaintiff alleges Mr. Stuart communicated directly with Plaintiff's employees regarding work-related tasks and did not keep Plaintiff informed, "undermin[ing] [Plaintiff's] authority by allowing her employees to circumvent her as their first-line supervisor[.]"[43]

On June 22, 2018, "Mr. Doubleday issued Plaintiff a notice of proposed suspension for seven days without pay on the charge of failure to follow supervisory instructions."[44] The notice specifies three instances of Plaintiff's failure to follow instructions in April and May, 2018.[45]

Four days later, on June 26, 2018, Plaintiff requested to be "removed from the hostile environment within 561 AMXS[.]"[46]

On July 9, 2018, Mr. Doubleday directed Plaintiff to report to his office before her scheduled EEO Office appointment the next day on July 10, 2018, and to report to Mr. Gray immediately following her EEO appointment.

On July 10, 2018, Plaintiff filed a Fourth Amendment to her EEO complaint alleging discrimination and retaliation based, in pertinent part, on her supervisors' directions to change the appraisal ratings of two of Plaintiff's white male employees over her objections; to conduct her employees' appraisal feedback sessions in Mr. Stuart's

---

[43] *Id.*

[44] *Id.* at p. 6; Notice of Proposed Suspension, Doc. 12-39.

[45] Doc. 12-39.

[46] *Id.* at p. 7.

10

office; to ban one of her employees from Building 47; Mr. Stuart's "personal character assassination" of her during one of the meetings; the Notice of Proposed Suspension; and the diminishment of Plaintiff's authority by allowing her employees to circumvent her as their first line supervisor.[47]

On August 6, 2018, Mr. Doubleday suspended Plaintiff for three days, four days less than the notice of proposed suspension for seven days issued on June 22, 2018. And on September 17, 2018, Plaintiff filed a Fifth Amendment to her EEO Complaint.[48]

On October 3, 2023, the EEO denied Plaintiff's request for reconsideration of the denial of her claims and issued Plaintiff notice of her right to sue within 90 days.[49] On December 29, 2023, Plaintiff timely filed her Complaint. On June 26, 2024, this Court ordered Plaintiff to show cause why the action should not be dismissed for failure to perfect service of the summons and complaint.[50] Plaintiff responded but had not properly perfected service. On April 8, 2025, the Court ordered Plaintiff to perfect service and gave her specific directions on how to do so. On May 5, 2025, Plaintiff filed proof of service, and on June 23, 2025, the Agency filed a Motion to Dismiss Plaintiff's original Complaint.

In response to the Agency's Motion to Dismiss, Plaintiff filed an Amended Complaint on July 3, 2025. On July 22, 2025, the Agency moved to dismiss all of Plaintiff's

---

[47] Doc. 12-16.
[48] Doc. 12-17.
[49] EEO Decision on Request for Reconsideration [Doc. 12-2].
[50] Doc. 5.

11

disparate treatment and harassment/hostile work environment claims, and all retaliation claims except in Claims 6, 9, 19, 20, and 21. As explained below, the Court grants the Agency's request to dismiss all claims except Plaintiff's retaliation claim in Claim 8. Thus, Plaintiff's retaliation claims in Claims 6, 8, 9, 19, 20, and 21 will proceed forward.

**DISCUSSION**

A.  Disparate Treatment Claims (Title VII and ADEA)

Federal employees' claims of race- and sex-based disparate treatment arise under 42 U.S.C. § 2000e-16(a), Title VII's federal-sector provision. That provision provides in pertinent part that "[a]ll personnel actions affecting [federal] employees … shall be made free from any discrimination based on … race … [or] sex …."[51] "The ADEA has a similar federal-sector provision[, 29 U.S.C. § 633a(a),] which provides that personnel actions affecting agency employees aged 40 years or older shall be made free from any 'discrimination based on age.'"[52] "Since the relevant provisions of Title VII and the ADEA are 'materially identical,' [the Eleventh Circuit] ha[s] construed them the same way."[53] "Both provisions 'demand[ ] that personnel actions be untainted by *any* consideration' of the protected basis—race and [sex] (as relevant here) under Title VII, and age under the

---

[51] 42 U.S.C. § 2000e-16(a); *see also Buckley v. Sec'y of Army*, 97 F.4th 784, 798 (11th Cir. 2024) (explaining that § 2000e-16(a) "requires federal-sector employees to make all personnel actions free from any discrimination") (cleaned up).

[52] *Durr v. Sec'y of Dep't of Veterans Affs.*, 2022 WL 23125086, *2 (11th Cir. June 28, 2022) (quoting 29 U.S.C. § 633a(a)).

[53] *Rosado v. Sec'y, Dep't of the Navy*, 127 F.4th 858, 865 (11th Cir. 2025) (citing *Babb v. Sec'y of Veterans Affs.*, 992 F.3d 1193, 1198 (11th Cir. 2021) (*"Babb II"*)).

ADEA."[54] "[A] federal employer violates the law if it allows the protected characteristic discrimination to contribute to any personnel action—even if the federal employer would have made precisely the same decision had it not engaged in the protected characteristic discrimination."[55]

Thus, Plaintiff does not have to allege that race, sex, or age was the but-for cause of the personnel action, but only that the "decision was in some way tainted by … discrimination."[56] She may do so, for example, by "provid[ing] evidence of a comparator employee—one similarly situated in all material respects—who was treated differently."[57] Or, more broadly, she can point to "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."[58] Such evidence "include[s] discriminatory comments, suspicious timing, arbitrariness in the employer's actions, pretext in the employer's rationale, better treatment of similarly situated … employees outside the protected group, and similar experiences by … employees [within the protected group]."[59] In sum, absent direct evidence, a federal-sector plaintiff must still point to circumstantial evidence demonstrating discrimination or retaliation, but she

---

[54] *Id.* (citing *Babb v. Wilkie*, 589 U.S. 399, 402 (2020) (*"Babb I"*) (emphasis added)).

[55] *Id.* (internal quotation marks and citation omitted).

[56] *Malone v. U.S. Att'y Gen.*, 858 F. App'x 296, 301 (11th Cir. 2021).

[57] *Lewis v. Sec'y of U.S. Air Force*, 2022 WL 2377164, at *11 (11th Cir. June 30, 2022).

[58] *Id.* at 9 (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)).

[59] *Bell v. Sec'y, Dep't of Veterans Affs.*, 2024 WL 1462405, at *4 (11th Cir. April 4, 2024).

bears a lighter burden on this point than a non-federal-sector plaintiff under *McDonnell Douglas*.[60]

Plaintiff alleges disparate treatment in each of her 23 claims, but she fails to provide enough factual matter taken as true to sufficiently state any claim for intentional discrimination based on race, sex, or age. Plaintiff's claims rest exclusively on her conclusory allegation that she suffered race, sex, and age discrimination because she is an African American woman over age 40. She fails to provide any other factual allegations to to plausibly infer that her race, sex, or age played any part in the Agency's decision-making process in reaching any of the alleged adverse employment actions.[61]

---

[60] *See Rosado*, 127 F.4th at 866 ("[I]f a federal employee wishes to use the *McDonnell Douglas* framework to state a claim, [s]he may continue to do so. It's just that *McDonnell Douglas* imposes a heavier burden than a federal employee must satisfy.").

[61] The Court notes Plaintiff's disparate treatment claims in Claims 5-7, 11-15, 17, 18, and 22 are also subject to dismissal because they do not involve any adverse employment action. As with private-sector employees, for a federal-sector employee to state a viable claim of discrimination under Title VII and the ADEA, she must demonstrate an adverse employment action. *See Buckley*, 97 F.4th at 749 ("[A] federal sector-employee must show … that a protected characteristic played any part in her employer's process in reaching an adverse employment decision." (emphasis omitted)). She "must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024). That is, she must point to an action that "brought some disadvantageous change in an employment term or condition." *Id.* at 354. She need not "show … that the harm incurred was significant" or "that the disadvantage … exceed[ed] a heightened bar." *Id.* at 355. For disparate treatment claims, like the ones Plaintiff asserts here, "[t]angible employment actions consist of things that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020). "Normally, to meet the statutory threshold, an action must negatively affect the employee's pay or benefits, or it must place the employee in an objectively undesirable position." *Dayoan v. Dejoy*, Case No. 4:21-CV-103 (CDL), 2022 WL 17177714 (M.D. Ga. Nov. 23, 2022) (*reconsideration denied*, 2022 WL 17823985 (M.D. Ga. Dec. 20, 2022)).

The only disparate treatment claim Plaintiff attempts to support with additional allegations is Claim 1. In support of Claim 1—that the Agency failed to hire her for the Deputy Chief position—Plaintiff offers two purported comparators that the Agency allegedly treated more favorably, but she fails to provide any allegations as to how they are similarly situated to her.

Plaintiff contends she was treated less favorably that Wendell Dabbs, a white male under 40 years old, and Ms. Campbell, a white female under 40 years old. But she neither alleges that they are similarly situated to her or how they are similarly situated to her. Indeed, she provides nothing about Mr. Dabbs' position, whether they were subject to the same employment policies, any offense Mr. Dabbs committed, how he may have been subject to any punishment, or even who Mr. Dabbs is other than his race or age. And Ms. Campbell, Plaintiff states, is one of her supervisors, so she and Plaintiff are not proper comparators. Thus, Plaintiff has failed to sufficiently allege any plausible race, sex, or age discrimination based on comparators in Claim 1.

Because Plaintiff has failed to plausibly allege race, sex, or age discrimination played "any role in the way [Plaintiff's] employer ma[d]e a[ny] decision,"[62] all of her disparate treatment claims must be dismissed.

B. Hostile Work Environment/Harassment Claims

---

[62] *Buckley v. Sec'y of Army*, 97 F.4th 784, 793 (11th Cir. 2024).

15

In Claims 4-23, Plaintiff alleges she was harassed and subjected to a hostile work environment based on her race, sex, and age in violation of Title VII and the ADEA. To establish a hostile work environment claim under Title VII and the ADEA, Plaintiff must show: "(1) she is a member of protected class; (2) she experienced unwelcome harassment; (3) the harassment was [based on race, sex, or age]; (4) the harassment was 'severe or pervasive enough to alter the terms and conditions of [her] employment and create a discriminatorily abusive working environment;' and (5) 'the employer is responsible for the environment under a theory of either vicarious or direct liability.'"[63]

Again, Plaintiff wholly fails to allege that any alleged harassment was in any way based on or connected to race, sex, or age discrimination. There is no allegation any person made any statement or performed any act that would suggest race, sex, or age-based animosity existed in Plaintiff's work environment. Plaintiff cannot sustain her claims based on her wholly conclusory allegations that she was harassed and subjected to a hostile work environment because of her race, sex, and age.[64] Thus, all of Plaintiff's harassment/hostile work environment claims must be dismissed.

C. Retaliation Claims

   1. Discriminatory Retaliation Claims

---

[63] *Id.* at 796 (quoting *Adams v. Austal U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

[64] The Court notes Plaintiff's claims also fail because she fails to plausibly allege any harassment was "severe or pervasive enough to altar the terms and conditions of [her] employment and create a discriminatorily abusive working environment." *Id.*

16

Plaintiff alleges discriminatory retaliation in each of Claims 4-23. The Agency moves to dismiss Claims 4, 5, 7, 8, 10-18, and 22-23.

In addition to prohibiting unlawful discrimination, Title VII and the ADEA prohibit retaliation against federal employees who engage in protected activity, such as complaining about discrimination.[65] The Eleventh Circuit has held that Title VII and the ADEA's "prohibition of 'any discrimination' also 'directly "bars reprisals against federal employees who file charges of discrimination.""'[66] To state a claim for retaliation, "an employee must show that (1) she engaged in protected activity …; (2) she suffered an adverse action; and (3) a causal link exists between the protected activity and the adverse action."[67] Like a discrimination claim, a federal employee need not show that retaliation was the but-for cause of an employment action; it is enough "that retaliation somehow figured into the process that led to the final decision" without having to satisfy the *McDonnell Douglas* framework.[68]

As explained below, for Claims 4, 5, 11-15, and 17, the activities for which Plaintiff alleges she was retaliated against do not constitute "protected activity"; for Claims 7, 18,

---

[65] *See Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (holding the ADEA bars retaliation for complaining about age discrimination); *Gilliam v. U.S. Dep't of Veterans Affairs*, 822 F. App'x 985, 989 (11th Cir. 2020) (Title VII's § 2000e-16(a) "extends to federal employees the same protections against discrimination and retaliation that are provided to private-sector employees")(citing *Porter v. Adams*, 639 F.2d 273, 278 (5th Cir. 1981)).

[66] *Buckley*, 97 F.4th at 797 (citing *Babb II*, 992 F.3d at 1203 (quoting *Porter v. Adams*, 639 F.2d 273, 277-78 (5th Cir. Unit A Mar. 1981))).

[67] *Varnedoe v. Postmaster Gen.*, 2022 WL 35614, *2 (11th Cir. Jan. 4, 2022).

[68] *Rosado*, 127 F.4th at 876.

and 22, the Agency's actions of which Plaintiff complains, even when accepted as true, do not meet the "materially adverse" personnel action sufficient to state a retaliation claim; and for Claims 10, 16, and 23, Plaintiff fails to sufficiently allege facts to support causation. The Agency moves to dismiss the retaliation claim in Claim 8, but the Court finds Plaintiff has sufficiently stated a claim for relief and denies the Agency's request.

### a.  Claims 4, 5, 11-15 and 17: No Protected Activity

In Claims 4, 5, 11-15, and 17, Plaintiff claims the Agency retaliated against her for the following protected activities: her email in March 2017 "inquiring" about Kirt Mullins being placed in the 561 AMXS Deputy Chief position (Claims 4 and 5); and her "questioning unfair appraisal practices" in May 2017 when Ms. Campbell and Mr. Stuart directed her to change the appraisal ratings of two white males under her supervision (Claims 11-15, and 17). But neither Plaintiff's "inquiring" nor her "questioning" qualifies as activity protected under Title VII or the ADEA.

The anti-retaliation provisions of Title VII and the ADEA apply only if Plaintiff engaged in protected activity. Here, Plaintiff claims she engaged in protected acts under Title VII and the ADEA by her opposition to discriminatory practices.

"'Opposed' as used in the opposition clause 'carries its ordinary meaning,' which includes 'to resist or antagonize; to contend against; to confront; resist; withstand.'" [69]

---

[69] *Patterson v. Georgia Pacific, LLC.* 38 F.4th 1336, 1347 (11th Cir. 2022) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.,* 555 U.S. 271, 276 (2009) (cleaned up)).

"Whether an employee has 'opposed' an unlawful employment practice depends on whether the employee's activity would be understood as opposition 'in the ordinary discourse' and in how 'we would naturally use the word.'"[70]

    (i)    *Claims 4 & 5*

In Claims 4 and 5, Plaintiff alleges she was retaliated against for "inquiring" about Kirt Mullins being placed in the Deputy Chief position in March 2017. Plaintiff attaches the email thread for which she believes she was retaliated against,[71] but the emails show that Plaintiff in no way opposed Mullins being placed in the position; she merely asks a series of questions about her role and responsibilities and for a meeting with Ms. Campbell.[72] In her initial email to Ms. Campbell, Plaintiff stated:

Ashley

1. Now that we have wrapped up the AMXG Annual Training and F-15eVSM, I would like to request a meeting with you to discuss my official role in F-15 WSSC (supported by written documentation). This is important going forward due to the changes/challenges that are headed to the P&A Office (their role in/support of the F-15 Road to…109 FDs, revised duties IRT providing analytical support to the squadron/WSSC functions, pending office move, 2017 Annual BUE-Appraisals, and other supervisory/personnel issues.

2. (Hearsay) There are plans in work by you to make Kirt Mullins the upcoming F-15 WSSC Deputy. If so, to put the F-15 P&A Office in align w/559 AMXS and 562 AMXS, they will fall under Mr. Mills, not me. I am still awaiting an official source document to validate the WSSC

---

[70] *Id.* (quoting *Crawford*, 555 U.S. at 276).

[71] Ex. 20, Compl. "March 21, 2017, Email Thread Regarding Plaintiff's Request to Discuss Her Official Role in F-15 WSSC" [Doc. 12-22]

[72] The email asks for a meeting with Ashley Wilder, which Plaintiff states in the Complaint is Ms. Campbell.

Deputy/P&A Office structure. With that being said, this puts my career in limbo again. I need to know your stand on this as well as the facts. Therefore I request you provide me with or give me permission to request the following documents (preferably prior to our meeting):

a. Latest approved-402 AMXG organization charts or any other official documents w/ organizational structure. (If there have been changes to the 402 AMXG organizational documents since 1 January 2016, I would like copies of all revisions as well)

b. RPA be generated documenting my move from 559 AMXS to 561 AMZA. (I have requested this several times (to date, I have not received a SF-50 confirming this has been accomplished))

c. I would like to know are there any career broadening opportunities for me in 561 AMXS, to include the NH-03301-03 F-15 WSSC Deputy position. (If so, what are the plans in filling these positions)

3. Going forward, I believe if we take the time (as leaders) to establish roles and responsibilities, boundaries, expectations, a reward system, etc. within the P&A Office, we will see an improvement in performance, morale, wingman support and labor relations (both employees and managers). If you would like to add or adjust the agenda for our meeting, please let me know. Thank you in advance for taking the time to address my concerns. 3/11/17/Corine Worthy, DSN 497-2697.

Ms. Campbell responded to Plaintiff's email stating that she would schedule a time for them to meet. Specifically in response to Plaintiff's inquiry about the Deputy position, Ms. Campbell stated:

2. At this time, I am waiting for the complex to approve the RPA for the WSSC Deputy position. Once I have this position filled I will ensure that all are provided the appropriate org structure of the 561st WSSC. These are the facts as I know them today, 13 March 2017. You always have permission to request any documentation that you may need for professional enhancement, as well as personal satisfaction. If you need help obtaining a particular document, please feel free to include me.
…

c. When the 561st Deputy WSSC position was open on USAJOBS, you personally came to my office to explain that you would NOT be applying because your wish was to "get into production." Is that still your desire?

Plaintiff responded to Ms. Campbell:

1. … When the 561 AMXS Deputy WSSC position was open on USAJOBS, I did not come to your office to explain that I would NOT be applying because I wished to "get into production. The reason I know I did not do this is I feel it would be inappropriate to discuss a position that is opened on USAJOBS with the hiring official (whether I am applying for the position or not).

2. I do recall us discussing this position after it closed. The conversation came up one afternoon after a personnel meeting …. You came to the door of my office. I told you I had asked Joe about the AMXG's P&A Chiefs positions. In turn, Joe asked me if I applied for the Deputy WSSC position. He said once I acquired another position, then the 559 AMXS P&A Chief position would come off the books because there were not enough positions in P&A to support the supervisor position. I told you I told him "no" for personal reasons. I also told you Mr. Kelly also asked me if I applied for the position (however, I did not give him an answer). This is when you told me you told Mr. Kelly I had applied. I told you I did not apply. To keep from causing conflict, I intentionally changed the conversation by telling you I had talked to Leo Honore about one of the production positions. You even expressed an interest working in production. We also talked about working other plans (this was after you inquired about the picture I have posted on my military friend and his son).

3. For me right now I want to know if the Deputy WSSC has been filled and if the P&A Team will fall under this individual (like the structures in C-17 and C-5). Also, I would like to know if filled, was the Deputy WSSC position filled noncompetitive. Please let me know. Thank you.

Plaintiff's emails do not constitute "protected activity" because nothing in her emails or her allegations plausibly show she "resist[ed]," "contend[ed] against," or "confront[ed]" her employer about an unlawful employment practice under Title VII or

21

the ADEA. She does not intimate or state anything that could be construed as her questioning or complaining about a discriminatory motive in the hiring decision, that the decision constituted an unlawful employment action, or that she opposed it. Because Plaintiff's claimed activity does not plausibly constitute "protected activity," her retaliation claims in Claims 4 and 5 must be dismissed.

(ii)    *Claims 11-15 and 17*

In Claims 11-15 and 17, Plaintiff alleges she was retaliated against for her alleged protected activity of "questioning unfair appraisal practices" when Ms. Campbell and Mr. Stuart directed her to change the appraisal ratings of two white males under her supervision despite Plaintiff's objections, directed her to conduct employees' appraisal feedback sessions in the presence of her supervisors, and allowed the employees that reported to Plaintiff to communicate directly with Plaintiff's supervisors.

But again, Plaintiff's questioning her supervisors' directives do not plausibly constitute "protected activity" under Title VII or the ADEA. Plaintiff's allegations simply show her supervisors directed her to make changes with which she disagreed. She provides no facts that could be construed as her questioning, complaining, or opposing any unlawful conduct under Title VII or the ADEA. Because Plaintiff's claimed activity does not plausibly constitute "protected activity" under Title VII or the ADEA, her retaliation claims in Claims 11-15, and 17 must be dismissed.

b.  <u>Claims 7, 18, and 22: No Materially Adverse Personnel Action</u>

22

Plaintiff alleges in July 2017, Ms. Campbell repeatedly "questioned" and "undermined" her authority as a first-level supervisor by speaking directly to Plaintiff's subordinates regarding performance of their duties (Claim 7); Plaintiff was directed to report to Mr. Doubleday's office in July 2017 before her scheduled EEO appointment (Claim 18); and, in response to her request in June 2018 to be removed from the "hostile work environment within the 561 AMXS," she was offered a "lower grade position as an Analyst GS-342-12, non-supervisory" in July 2018 "or she could continue with her EEO complaint and remain" in her current position (Claim 22). These claims must be dismissed because they do not involve any materially adverse personnel action.

Title VII's and the ADEA's anti-retaliation provisions "appl[y] only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm."[73] To support a retaliation claim, the allegedly retaliatory conduct must have been "serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination."[74] "The Supreme Court has emphasized that 'a plaintiff must show that a reasonable employee would have found the challenged action *materially* adverse,' separating 'significant from trivial harms' such as 'petty slights, minor annoyances, and simple lack of good manners.'"[75]

---

[73] *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).

[74] *Id.* (cleaned up).

[75] *Terrell v. Dep't of Veterans Affairs*, 98 F.4th 1343, 1356 (11th Cir. 2024) (emphasis in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

(i) *Claim 7*

The alleged mistreatment in Claim 7 is that Ms. Campbell "repeatedly questioned and undermined Plaintiff's authority as a first-level supervisor by going to Plaintiff's employees regarding the performance of their duties."[76] Plaintiff provides no other allegations. That Ms. Campbell, Plaintiff's supervisor, simply spoke to employees who were also under Ms. Campbell's management about the employees' performance of duties, is not "serious enough to dissuade a reasonable worder from making or supporting a charge of discrimination."[77] Plaintiff's allegation that such action "undermined Plaintiff's authority" is a conclusory allegation. The alleged mistreatment in Claim 7 is akin to a "petty slight" or "minor annoyance." Because Plaintiff fails to sufficiently allege a materially adverse personnel action, Plaintiff's retaliation claim in Claim 7 must be dismissed.

(ii) *Claim 18*

In Claim 18, Plaintiff merely alleges that she was directed to report to Mr. Doubleday's office the day before she reported for her scheduled EEO appointment and to report to another supervisor's office after that meeting. She provides no other allegations. But the mere fact she was directed to attend a meeting is not a materially adverse personnel action "serious enough to dissuade a reasonable worker from making

---

[76] Am. Compl., p. 3.
[77] *Muldrew*, 601 U.S. at 355.

24

or supporting a charge of discrimination."[78] Thus, Plaintiff cannot maintain a retaliation claim in Claim 18.

(iii) *Claim 22*

Finally, in Claim 22, Plaintiff complains about Timothy Gray's email response to her earlier request to be removed from "the hostile environment within 561 AMXS."[79] According to Plaintiff's allegations, Mr. Gray, Deputy Director of 402 AMXG, sent an email "offering Plaintiff a lower-grade position as an Analyst, GS-342-12, nonsupervisory, in 401 AMXG/Operations Branch (MXDS) or she could continue with her EEO and remain where she was."[80] But Plaintiff attached Mr. Gray's email, and it shows Mr. Gray simply offers Plaintiff another position at Robins AFB and asks for her to let him know if that would resolve her concerns.[81] Mr. Gray wrote:

> Corine,
>
> After checking with the complex, other groups, I have found an analyst position in MDXS here in AMXG I believe would be suited for your talents and expertise.
>
> It is a 343-12 non-supervisory. Primary focus would be doing detailed analysis of ILF, Efficiency, Manpower, etc. to provide info to complex, Group, Squadron leadership.
>
> Please advise if you feel that would relieve the current tension you feel and resolve your EEO concerns.

---

[78] *Id.*
[79] Am. Compl., p. 7.
[80] *Id.* at pp. 7-8.
[81] [Doc. 12-45].

If so I can have something official drafted up so we have something official; if not and you want to continue with EEO and remain where you [are] for now let me know.[82]

Because no reasonable worker could construe this email as serious enough to dissuade the worker from making or supporting a charge of discrimination, it cannot support a retaliation claim.

### c. Claims 10, 16, and 23: No Causation[83]

Discriminatory retaliation claims under Title VII and the ADEA require there to be a causal connection between the protected activity and the adverse employment action.[84] For a federal employee, "it's enough to establish that retaliation somehow figured into the process that led to the final decision."[85] Plaintiff fails to sufficiently allege any facts to plausibly establish that retaliation played any part in the alleged retaliatory decisions in Plaintiff's Claims 10, 16, and 23.

#### (i) *Claim 10*

Plaintiff initially filed her informal complaint of discrimination on April 27, 2017; she participated in a mediation on May 18, 2017; she filed her formal complaint on July 14, 2017; and she filed five amendments to her complaint on August 31, 2017; November 16, 2017; February 6, 2018; July 10, 2018; and September 7, 2018.

---

[82] *Id.*

[83] The Court notes that Claims 4, 5, 10-15, and 17 also fail for lack of causation.

[84] *Varnedoe*, 2022 WL 35614 at *2.

[85] *Rosado*, 127 F.4th at 876 (citing *Buckley*, 97 F.4th at 798).

26

In Claim 10, Plaintiff alleges on January 19, 2018, Ms. Campbell gave her a lowered overall contribution score on her CCAS Salary Appraisal documents in retaliation for her "ongoing EEO activities on August 31, 2017, [ ][86]and November 16, 2017" that caused her to receive a lowered contribution award and not receive a salary increase compared to her peers.[87] Plaintiff alleges no other facts in support of this claim, and thus, causation can only be sustained through the temporal proximity between her EEO complaint and her lowered contribution score. When a plaintiff relies solely on temporal proximity to establish causation, the temporal proximity between the employment decision and the protected activity must be "very close."[88]

The filing of a complaint generally constitutes protected activity for a retaliation claim. But neither Plaintiff's informal complaint, made nine months before she received a lowered contribution score, nor her formal complaint, made six months before the lowered score, can establish causation solely through temporal proximity. "That is far too long to allow for the inference that retaliation infected the decision-making process that resulted in [Plaintiff's lowered score]."[89] And, even assuming Plaintiff's amendments can

---

[86] Plaintiff also alleges she had an "ongoing EEO activit[y]" in on September 7, 2017, but her attachments show no such activity. Plaintiff filed her Fifth Amendment to her EEO Complaint on September 7, 2018, not 2017. But even if Plaintiff did have some activity on September 7, 2017, her Claim 10 still fails for the reasons explained in this section.

[87] Am. Compl., p. 4.

[88] *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1309 (11th Cir. 2023) ("[V]ery close temporal proximity between a protected activity and an adverse action can create an inference of causation.").

[89] *Buckley*, 97 F.4th at 799 (plaintiff's reliance on an eight-month gap between her EEO complaint and her proposed termination "far too long" to rely on temporal proximity to establish causation for retaliation claim).

serve as a relevant trigger date for calculating "close temporal proximity," Plaintiff cannot rely on the amendments she filed in August and November 2017, to demonstrate causation through temporal proximity. Plaintiff filed her August amendment over four months before she received the lower contribution scores,[90] which is too far to establish causation. Four months is a duration that courts have held negates a temporal cause connection. Indeed, the Eleventh Circuit "has held in a published opinion that a three-month gap is not considered 'very close' such that temporal proximity alone is sufficient" to establish causation.[91] Although Plaintiff's December amendment was filed two months before she received her lowered scores, which is a closer call, her December amendment is redundant of her previous claims. "[A] Title VII claimant cannot, with each protected activity, re-start 'the temporal-proximity clock.'"[92]

       (ii)  *Claim 16*

In Claim 16, Plaintiff alleges that she received notice in June 2018 of a proposed future suspension for seven days for failure to follow supervisory instructions in retaliation for her EEO activities in February 2018 and for "questioning unfair appraisal practices in April-May 2018[.]"[93] Again, Plaintiff alleges no other facts in support of this claim, and thus, causation can only be sustained through the temporal proximity between

---

[90] If Plaintiff filed any EEO activity on September 7, 2017, it too, would have been filed over four month before she received the lower contribution scores.

[91] *Jacomb v. BBVA Compass Bank*, 791 F. App'x 120, 124 (11th Cir. 2019).

[92] *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 n. 23 (5th Cir. 2017); *see also Brogdon v. Grady Memorial Hosp. Corp.*, Case No. 1:22-cv-4512-CMS, 2025 WL 948338, *24 (N.D. Ga. March 28, 2025).

[93] Am. Compl., p. 6.

her protected activity and the notice of proposed suspension. But, as explained above, the four-month gap between Plaintiff's fifth amendment to her EEO complaint filed in February and the notice of proposed suspension in June, is too long to rely solely on temporal proximity to establish causation. And this Court has already found Plaintiff's "questioning unfair appraisal practices in April-May 2018" does not qualify as protected activity. Thus, Claim 16 must be dismissed.

(iii) *Claim 23*

In Claim 23, Plaintiff claims Mr. Doubleday "issued Plaintiff a Notice of Decision to Suspend for 3 days" on August 6, 2018, in retaliation for her Fourth Amendment to her EEO complaint she filed on July 10, 2018. But Doubleday issued Plaintiff a notice of the proposed suspension on June 22, 2018, before Plaintiff filed her July 10, 2018 amendment. "When an employer makes a tentative decision *before* protected activity occurs, the fact that an employer proceeds with such a decision is not evidence of causation."[94] Because Plaintiff's supervisor had already begun the process of issuing her suspension in June 2018 (which, as explained above, is too far from her original complaints and previous amendments to establish causation through temporal proximity alone), and only effectuated that decision with a final notice in August 2018, after the July 2018 amendment, she does not adequately allege causation for Claim 23. Moreover, Plaintiff

---

[94] *Saffold v. Special Couns., Inc.*, 147 F. App'x 949, 951 (11th Cir. 2005) (citing *Breeden*, 532 U.S. at 272,

attached both the notice of proposed suspension[95] and the notice of suspension[96] to her Amended Complaint. There is no support in either Plaintiff's allegations or the suspension notices, which details the reasoning for the suspension—failure to perform duties—to plausibly support any retaliatory or discriminatory motive for the suspension. Thus, Plaintiff's Claim 23 must be dismissed.

### d.   Claim 8: Plaintiff Has Sufficiently Stated a Retaliation Claim

In Claim 8, Plaintiff alleges a request for personnel action had been generated in March 2017, before she filed her informal complaint, to move her into a vacant NH-0301-003 position, but on July 24, 2017, a week after she filed her formal EEO Complaint, she was informed that she would not be placed in the vacant position. The Agency moves to dismiss Plaintiff's retaliation claim arguing Plaintiff fails to allege a specific act of mistreatment. But at this stage of the proceedings, and liberally construing Plaintiff's *pro se* allegations, the Court finds Plaintiff has sufficiently alleged the Agency did not move her to the vacant position in retaliation for filing her EEO Complaint. Thus, this claim will proceed forward.

### 2.   Retaliatory Hostile Work Environment Claims

In her response to the Agency's Motion to Dismiss, Plaintiff states she asserts retaliatory hostile work environment claims. "A retaliatory-hostile-work-environment

---

[95] [Doc. 12-39].
[96] [Doc 12-46].

claim complains that the employer created or tolerated a hostile work environment in retaliation for an employee's participation in protected activity under Title VII [or the ADEA]."[97] Because retaliatory-hostile-work-environment claims are "really … retaliation claims … rather than … 'hostile[-work]-environment claims[,]' [the Court] use[s] the retaliation standard—'whether the employer's complained-of action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"'—rather than the hostile-work-environment standard—'severe or pervasive'—to assess a retaliatory-hostile-work-environment claim."[98]

Because Title VII and the ADEA's federal-sector provisions refer to only "personnel actions," "to state a claim for retaliatory hostile work environment, a federal-sector plaintiff must establish that, to retaliate against her for engaging in protected Title VII [or ADEA] activity, her employer created or tolerated a work environment that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination' and that environment rose to the level of a 'personnel action.'"[99]

But Plaintiff did not allege retaliatory hostile work environment claims in her Amended Complaint. And it is well settled that a plaintiff may not amend a complaint

---

[97] *Buckley*, 97 F.4th at 799.

[98] *Id.* (quoting *Babb II*, 992 F.3d at 1207).

[99] *Id.* (quoting *Babb II*, 992 F.3d at 1207-09).

via arguments made in a brief, even when proceeding *pro se*.[100] Thus, Plaintiff has no retaliatory hostile work environment claims in this case.

## CONCLUSION

As explained above, because Plaintiff's Amended Complaint supersedes her original complaint, the Agency's original Motion to Dismiss [Doc. 11] is rendered **MOOT**.[101] And having considered the Agency's Partial Motion to Dismiss Plaintiff's Amended Complaint, the operative pleadings, and the applicable law, the Court **GRANTS in part** and **DENIES in part**[102] the Agency's Partial Motion to Dismiss [Doc. 17]. All of Plaintiff's disparate treatment and harassment/hostile work environment, and Plaintiff's retaliation Claims 4, 5, 7, 10-18, 22, and 23 are **DISMISSED**.[103] Plaintiff's retaliation claims in Claims 6, 8, 9, and 19-21 will proceed forward.

**SO ORDERED,** this 27th day of March, 2026.

S/ C. Ashley Royal_____
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[100] *Davis-Harrison v. Chief United States Prob. Officer Middle Dist. of Fla.*, No. 22-14334, 2024 WL 2874046, at 2 (11th Cir. June 7, 2024) (per curiam) (collecting cases).

[101] *Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (An amended pleading "supersedes the former pleading" such that "the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.") (internal quotation marks and citation omitted).

[102] The Court denies Defendant's request to dismiss Plaintiff's retaliation claim in Claim 8.

[103] Ordinarily, the Court would afford a *pro se* plaintiff an opportunity to amend her complaint. But Plaintiff has already amended her Complaint in response to the Agency's first Motion to Dismiss.